851 F.2d 356
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
DAIRY KING, INC., Plaintiff-Appellee
v.
KRAFT, INC., Defendant-Appellant
DAIRY KING, INC., Plaintiff-Appellant
v.
KRAFT, INC., Defendant-Appellee
 Nos. 87-2631, 87-2635.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 10, 1988.
Decided: July 11, 1988.
 
 John A. MacColl and David Clarke, Jr. (Piper & Marbury), for appellant and cross-appellee.
 Judith D. O'Neill and William K. Meyer (Weinberg and Green), for appellee and cross-appellant.
 Before MURNAGHAN and CHAPMAN, Circuit Judges, and JAMES B. McMILLAN, District Judge for the Western District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Plaintiff Dairy King, Inc., and defendant Kraft, Inc., are disputing about the alleged terms and conditions of a 32-year-old distribution contract which no one has seen for over thirty years and which ostensibly made Dairy King the exclusive Maryland distributor of Breakstone dairy products. The background of this case is summarized in Dairy King, Inc. v. Kraft, Inc., 645 F.Supp. 126 (D.Md.1986). Plaintiff's complaint for breach of the contract was tried to a jury from December 17 to December 22, 1986, before District Judge Joseph Young. On December 22, 1986, the jury returned a verdict in favor of Dairy King. The jury found that in 1953 Dairy King and Breakstone Brothers, defendant Kraft's predecessors, had executed a contract giving Dairy King an exclusive right to distribute Breakstone products in Maryland and requiring Breakstone to buy out Dairy King before re-entering the Maryland market and selling its products to other distributors. The jury also awarded Dairy King damages of $20,000 and a judgment was entered to that effect.
 
 
 2
 After consideration of memoranda tendered by counsel and a hearing on the scope of the contract's buy-out provision, Judge Young entered an order denying defendant's motions for a new trial and for judgment notwithstanding the verdict, and enjoining Kraft either to resume its exclusive arrangement with Dairy King or offer to buy out the Breakstone product-line share of Dairy King's business. Kraft appeals the portion of Judge Young's order denying its post-trial motions and Dairy King appeals Judge Young's order with regard to the scope of the buy-out provision. Since the jury's verdict is amply supported by the evidence and Judge Young's order is consistent with the evidence and that verdict, we affirm.
 
 
 3
 The substantive legal issues as to the contract's validity and enforceability are governed by the law of New York, the place where the alleged contracting took place. Kraft correctly points out that New York law does not enforce vague and indefinite contract provisions; but contract provisions are not vague and indefinite simply because the contracting parties disagree about their meaning. Contract provisions are vague and indefinite if they do not provide an adequate basis or standard for deciding whether the agreement has been kept or broken and there are no extrinsic means by which the terms may be made certain, e.g., trade usage, past practice of the parties. See, Candid Productions v. International Skating Union, 530 F.Supp. 1330 (S.D.N.Y.1982); Bankers Trust Co. of Western New York, 409 N.Y.S.2d 51, 62 (1978).
 
 
 4
 Kraft and Dairy King adamantly disagree whether a contract ever existed and if it did, what its terms were. Dairy King presented evidence of its existence and Kraft presented evidence of its nonexistence.
 
 
 5
 After listening to three days of testimony the jury found that in 1953 an exclusive distributorship contract was entered into between Dairy King and Breakstone Brothers. The jury was apparently persuaded by the testimony of three witnesses who said they had read and still remembered the terms of the contract. Murray Goldstein, former manager of Breakstone and founder of Dairy King, Inc., testified that he negotiated and signed the contract with Larry Becker, the sales manager, vice president and eventual president of Breakstone Brothers, at Becker's New York office. Edith Goldstein testified that she read the contract when her husband returned from New York. Walter Kushner, Dairy King's accountant, testified that he also read the contract when Goldstein returned from Baltimore. Becker's administrative assistant, Eugene Pitrick, did not read the contract and did not witness the actual signing, but testified that he was there when the contract was negotiated and heard it being dictated. The vice president of one of Dairy King's competitors testified that Becker had told him that Breakstone Brothers had an agreement with Dairy King which it had to abide by. And finally, there was the circumstantial evidence that the contract had been performed according to its alleged terms for over thirty years.
 
 
 6
 The jury also found that Kraft could terminate the contract by buying out Dairy King at its fair market value. That issue was presented to the jury and answered as follows:
 
 
 7
 3. Did the alleged contract give Kraft's predecessor Breakstone, the option to buy out Dairy King at its fair market value? (Jury answered "yes" )
 
 
 8
 If yes, does the contract require Breakstone to exercise the option
 
 
 9
 a. before entering market? (Jury answered "Yes" )
 
 
 10
 b. after entering the market? (Jury answered "No" )
 
 
 11
 Kraft contends that even if there was enough evidence to show that some sort of contract was entered into between the parties, there was not enough evidence from which the jury could conclude that Breakstone was required to exercise the buy-out option before entering the market, and that the buy-out provision was the means for ending the contract rather than the means for compensating Dairy King in the event of a breach. Kraft's assertion is incorrect. There were some inconsistencies in the testimony but for the most part Murray Goldstein, Edith Goldstein, and Walter Kushner testified that the buy-out provision was the mechanism by which Dairy King's interest in the distributorship was protected and Breakstone Brothers' right to re-enter the Maryland market was preserved.
 
 
 12
 The evidence was sketchy on some points and hotly contested on others. Judge Young did not err in submitting this case to the jury, and having them wade through, weigh and decide the conflicting evidence. He appropriately accepted the jury's findings, and his order denying Kraft's motions for judgment notwithstanding the verdict and for a new trial is AFFIRMED.
 
 
 13
 The one contested issue which Judge Young did not submit to the jury was the scope of the buy-out provision. Judge Young concluded that the buy-out provision was ambiguous and correctly resolved the ambiguity by evaluating the hearing testimony and concluding that had the parties contemplated the scope of the buy-out provision they would have limited it to the buy out of Dairy King's interest in Breakstone products only. See, National Distillers v. First National Bank, 804 F.2d 978, 982 (7th Cir.1986) ("Ambiguities and gaps in contracts should be resolved by finding what the parties would have bargained for had they addressed the matter explicitly at the time.").
 
 
 14
 The evidence shows that the parties intended to provide Dairy King with a measure of security in the form of an exclusive distributorship and the buy-out provision, and to provide Breakstone with a means of re-entering the Maryland market. When the contract was entered into, Breakstone products accounted for almost all of Dairy King's business. A promise to buy Dairy King's other product lines would have afforded Dairy King only a small increase in financial security and would have been of no benefit to Breakstone Brothers since they were only interested in the distribution of Breakstone products. Today, Breakstone products account for only 10% of Dairy King's product lines. To require Kraft to buy out Dairy King in its entirety would give Dairy King an un-bargained for benefit and Kraft an unassumed burden.
 
 
 15
 Accordingly, the judgment of the district court is AFFIRMED.